UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
AUBREY LOVE, PAUL DUNHAM, and ANDREW NELSON,

                           Plaintiffs,

             -against-

PREMIER UTILITY SERVICES, LLC and USIC LOCATING
SERVICES, LLC,

                        Defendants.
-------------------------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
15-cv-5698 (ADS)(ARL)

**APPEARANCES:**

**Borelli & Associates PLLC**
*Attorneys for the Plaintiffs*
1010 Northern Boulevard, Suite 328
Great Neck, NY 11021
        By:  Michael J. Borelli, Esq.
                Alexander T. Coleman, Esq., Of Counsel

**Littler Mendelson PC**
*Attorneys for the Defendants*
290 Broadhollow Road, Suite 305
Melville, NY 11747
        By:  Amy L. Ventry-Kagan, Esq.
                Leslie M. DiBenedetto, Esq., Of Counsel

**SPATT, District Judge:**

      On October 1, 2015, the Plaintiffs Aubrey Love ("Love"), Paul Dunham ("Dunham"),

and Andrew Nelson ("Nelson", together with Love and Dunham, the "Plaintiffs")

commenced this civil rights action against their former employer, the Defendant Premier

Utility Services, LLC ("Premier"), and its parent company USIC Locating Services, LLC

("USIC", together with Premier, the "Defendants"), alleging race-based employment

discrimination and a racially hostile work environment, in violation of 42 U.S.C. § 1981

("§ 1981") and relevant provisions of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*

Presently before the Court is motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), seeking to dismiss the complaint for failure to state a claim upon which relief may be granted.  For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## I.     Background

Unless otherwise noted, the following facts are drawn from the complaint and are construed in favor of the Plaintiffs.

Premier is a New York corporation with a principal place of business in Hauppauge. See Compl. ¶ 6.  Although the company was acquired in or about April 2015 by the Defendant USIC, Premier continues to be recognized by the New York State Division of Corporations as a discrete operating entity, and all of the relevant events alleged in the complaint occurred pre-acquisition.  See id. ¶ 7.  Relevant here, Premier operates facilities in three New York locations:  Queens, Brooklyn, and Hauppauge.  See id. ¶ 10.

The Plaintiffs are African American.  See id. ¶ 2.  As employees of Premier, they were each assigned to work on manhole projects, which are allegedly considered "field positions" in that they are "physically taxing jobs that pay considerably less than Premier's office or management positions."  See id. ¶¶ 13-14.  Allegedly, the majority of Premier employees assigned to work on manhole projects are African American, while the majority of employees working in "higher paying, less strenuous office or management positions" are Caucasian or non-African American.  See id. ¶¶ 15-16.

**A.      The Allegations Relating to the Plaintiff Aubrey Love**

Love began his employment at Premier's Queens location on September 9, 2013. See id. ¶ 11.  In September 2014, he was allegedly transferred to the company's Hauppauge location in order to complete a so-called Damage Prevention Specialist training program (the "Training Program").   See id. ¶ 17.   Allegedly, the Hauppauge location was staffed predominantly by Caucasian employees.  See id.

Approximately one week into his tenure at the Hauppauge location, Love parked his car in the front of the Premier building.  See id. ¶ 18.  The company's Senior Director of Field Operations, one Edward Heaney, wrote Love a "fake parking ticket" and placed it on his vehicle's windshield.  Id.  The Plaintiffs allege that this was done "to make Mr. Love feel uncomfortable and unwelcome" because Heaney "did not want African Americans working in Hauppauge."  Id.  In this regard, it is alleged that Heaney "would openly and frequently refer to African American employees as 'dumb niggers' " in Love's presence.  Id. ¶ 19.

Is it further alleged that, in late-September 2014, Love was assigned to report to a supervisor identified as "Mike K," who, according to the Plaintiffs, is "a self-proclaimed Ku Klux Klan member."   Id. ¶ 20.   Mike K allegedly stated to Love that he "proudly flew a Confederate flag" in the front of his home.  Id. ¶ 21.

On one occasion in October 2014, Mike K allegedly made the following remark to Love:  "Ed [Heaney] placed you with me in hopes that I would make you quit your job, but you're different.  You're not like the other niggers."  Id. ¶ 23.  He further stated that: "the definition of a 'nigger' is an ignorant person.  You talk with sense.  You're different than most niggers."  Id.

On another occasion in January 2015, Heaney allegedly stated to two supervisors in Love's presence: "don't worry about those stupid niggers, they're going to fail" the Training Program.  Id. ¶ 24.  He further stated that "[w]e don't need any niggers out here on [Long] Island representing Premier."  Id.

On January 28, 2015, Love's employment was terminated.  See id. ¶ 25.  The reason provided by Premier was that business had slowed, and Love was advised that he would be contacted for future work opportunities if and when business increased.  See id.  However, the company never contacted Love again.  See id.

**B.      The Allegations Relating to the Plaintiff Paul Dunham**

Dunham began his employment at Premier's Brooklyn location on July 24, 2014. See id. ¶ 12.  Similar to Love, Dunham was transferred from Premier's Brooklyn location in December 2014 to complete the Training Program in Hauppauge.  See id. ¶ 29.

Allegedly, in mid-January 2015, Dunham overheard Heaney remark to two other supervisors "don't worry about those stupid niggers, they're going to fail this [training] course.  We don't need any niggers out here on [Long] Island representing Premier." Id. ¶ 30.

Similar to Love, on or about January 24, 2015, Dunham was allegedly told that Premier's business had slowed and that his employment was being terminated.  See id. ¶ 31.  Like Love, the company advised Dunham that it would contact him for future work opportunities, but never did.  See id.

4

**C.     The Allegations Relating to the Plaintiff Andrew Nelson**

Nelson also began his employment at Premier's Brooklyn location on July 24, 2014. See id. ¶ 12.  Similar to Love and Dunham, in December 2014 Nelson was transferred from Premier's Brooklyn location to complete the Training Program in Hauppauge.  See id. ¶ 26.

Allegedly, in mid-January 2015, Nelson was in a bathroom stall during a break period and overheard Heaney remark to another supervisor that "none of the niggers in the training program will end up representing the company."  Id. ¶ 27.

Similar to Love and Dunham, on January 24, 2015, Nelson's employment was terminated due to a purported downturn in business.  See id. ¶ 28.  Again, Premier advised Nelson that the company would contact him for future work opportunities if and when business increased.  See id.  However, it never contacted him again.  See id.

**D.     The Present Action**

On these facts, the Plaintiffs allege causes of action based on racial discrimination and a racially hostile work environment, in violation of § 1981 and the NYSHRL.

On December 4, 2015, the Defendants moved under the provisions of Fed. R. Civ. P. 12(b)(6) to dismiss the complaint, contending that the Plaintiffs' allegations, even if taken as true, fail to plausibly state claims upon which relief can be granted.

## II.     Discussion

**A.     The Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."  "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and

'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." Otis-Wisher v. Medtronic, Inc., 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

**B.     As to Whether the Plaintiffs Have Stated Plausible Claims for Race-Based Employment Discrimination under 42 U.S.C. § 1981**

**1.     The Applicable Legal Standards**

"Section 1981 prohibits intentional discrimination on the ground of race with respect to, *inter alia*, the enjoyment of the terms of employment." Skates v. Inc. Vill. of Freeport, No. 15-cv-1136, 2016 U.S. Dist. LEXIS 16564, at *42-*43 (E.D.N.Y. Jan. 28, 2016) (Report and Recommendation), adopted, 2016 U.S. Dist. LEXIS 49634 (E.D.N.Y. Apr. 12, 2016) (citing Patterson v. County of Oneida, New York, 375 F.3d 206, 224 (2d Cir. 2004)). Claims of racial discrimination under § 1981 are analyzed under the same standards used for claims of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* See id. at *43 (citations omitted).

In this regard, the Supreme Court has instructed that a Title VII plaintiff need not allege a prima facie case of discrimination in order to survive a motion to dismiss. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (noting that a plaintiff complaining of discrimination need not plead that he was a member of a protected class; was qualified for the position in question; and suffered an adverse employment action under circumstances supporting an inference of discrimination, as is normally required at the summary judgment stage under McDonnell Douglas).

Rather, "the ordinary rules for assessing the sufficiency of a complaint apply" to claims of racial discrimination,  id. at 511 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94

S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (explaining that the "limited" task of a reviewing court under Rule 12(b)(6) is not to determine "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"), and "a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation,' " Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015) (quoting Littlejohn v. City of New York, 795 F.3d 297, 310-11 (2d Cir. 2015)); see also Azkour v. Bowery Residents' Comm., Inc., No. 15-887, 2016 U.S. App. LEXIS 6890, at *3 (2d Cir. Apr. 18, 2016); Leketty v. City of New York, No. 15-cv-1169, 2016 U.S. App. LEXIS 2083, at *2 (2d Cir. Feb. 8, 2016).

### 2.    Application to the Facts of this Case

Applying these standards, the Court finds that the complaint in this case clearly states a viable cause of action based on race-based employment discrimination.  The Plaintiffs, all African American, allege that they were transferred to a Premier location that was staffed with predominantly Caucasian employees, including one who allegedly identified as a white supremacist.  They further allege that, upon arriving at the new facility, they were subjected to various racially-tinged remarks by their direct supervisor and others in managerial positions.  This included numerous occasions were the word "nigger" was used, including at least one such occasion where that term was directed at the Plaintiff Love.  In this regard, the allegations include multiple statements that overtly and impliedly suggested that the supervisors of the Hauppauge location did not want African Americans joining the company's Long Island contingency.  In each case, the Plaintiffs allege that they were made to feel unwelcome and were eventually terminated, ostensibly without cause.

Under the authority of <u>Swierkiewicz</u> and its progeny, the Court finds that these allegations lend sufficient plausible support to a minimal inference of discriminatory motivation to pass Rule 12 muster.  Indeed, in the Court's view, there is no doubt that the allegations give the Defendants fair notice of what the Plaintiffs' claims are and the grounds upon they rest.  See <u>Swierkiewicz</u>, 534 U.S. at 514.  No more is required.

Accordingly, the Defendants' motion to dismiss the Plaintiffs' claim of racial discrimination under § 1981 for failure to state a claim is denied.

**C.    As to Whether the Plaintiffs Have Stated Plausible Claims for Race-Based Employment Discrimination under the NYSHRL**

It is well-settled that discrimination claims under the NYSHRL are also analyzed using the standards applicable to Title VII claims.  See <u>Knox v. Town of Southeast</u>, 599 F. App'x 411, 413 (2d Cir. 2015); <u>Wolf v. N.Y. City Dept. of Educ.</u>, 421 F. App'x 8, 10 (2d Cir. 2011); <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 80 (2d Cir. 2010).  The Second Circuit has recognized that the <u>Swierkiewicz</u> pleading standard discussed above "applies with equal force" to such claims.  <u>Williams v. N.Y. City Hous. Auth.</u>, 458 F.3d 67, 72 (2d Cir. 2006) (citing <u>Edwards v. Marin Park, Inc.</u>, 356 F.3d 1058, 1062 (9th Cir. 2004)).

Thus, for substantially the same reasons as outlined above, the Court finds that he complaint in this case states a plausible claim for racial discrimination under the NYSHRL, and the Defendants' motion to dismiss that claim is denied.

**D.    As to Whether the Plaintiffs Have Stated Plausible Claims for a Racially Hostile Work Environment under 42 U.S.C. § 1981**

**1.    The Applicable Legal Standards**

"Section 1981 has been interpreted to 'provide[ ] a cause of action for race-based employment discrimination based on a hostile work environment.' " <u>Littlejohn</u>, 795 F.3d at

320 (quoting <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 69 (2d Cir. 2000)).

"To establish a hostile work environment . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " <u>Id.</u> at 320-21 (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

"'This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive.' " <u>Id.</u> at 321 (quoting <u>Raspardo v. Carlone</u>, 770 F.3d 97, 114 (2d Cir. 2014)).  "In determining whether a plaintiff suffered a hostile work environment, [the Court] must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Id.</u> (quoting <u>Harris</u>, 510 U.S. at 23).

### 2.      Application to the Facts of this Case

At the outset, the Court is persuaded by the Defendants' contention that the Plaintiffs may not "aggregate" their allegations in order to depict an overall hostile work environment.  <u>See, e.g.</u>, <u>Berryman v. SuperValu Holdings, Inc.</u>, 669 F.3d 714, 718-19 (6th Cir. 2012) (holding that, for purposes of establishing a hostile work environment, "a group of plaintiffs may [not] aggregate all of their claims regardless of whether they were aware of one another's experiences or not").  Rather, as to each of the Plaintiffs, the complaint

must set forth sufficient facts to make it plausible that they individually suffered a racially hostile work environment.

### a.    As to the Plaintiff Love

Over the course of approximately four months, between September 2014 and late-January 2015, Love alleges that he was subjected to the following conduct that forms the basis of his hostile work environment claim:

(1) one week into his tenure, in or about early-September 2013, Heaney placed a fake parking ticket on Love's vehicle;

(2) Heaney "openly and frequently" referred to African American employees as "dumb niggers" in Love's presence;

(3) in late-September 2014, Love was made to report to Mike K, who allegedly identifies as a white supremacist and stated to Love that he "proudly" displays a Confederate flag at his home;

(4) in October 2014, Mike K stated to Love that Heaney's goal in having him report to Mike K was to make him quit his job;

(5) also in October 2014, Mike K stated to Love that the definition of a "nigger" is an "ignorant person," but that Love was "not like the other niggers" because he "talk[ed] with sense";

(6) in January 2015, Heaney stated to other supervisors in Love's presence that the "stupid niggers" were going to fail the Training Program; and

(7) also in January 2015, Heaney stated to other supervisors in Love's presence that Premier did not "need any niggers" presenting the company on Long Island.

In the Court's view, these allegations, taken as true and construed in favor of the Plaintiff Love, plausibly allege a racially hostile work environment.  The complaint makes it clear that the word "nigger," which is of course an "unambiguous racial epithet," was "bantered about regularly" by Heaney and other supervisors in positions of superiority relative to Love.  Ewing v. Coca Cola Bottling Co. of New York, Inc., No. 00-cv-7020, 2001

U.S. Dist. LEXIS 8849, at *21-*22 (S.D.N.Y. June 25, 2001).   Allegedly, one of these supervisors openly identifies with a racist organization.

Further, the Defendants are alleged not only to have used this slur, but to have done so repeatedly in such a way as to communicate to the Plaintiffs that Premier did not want individuals of their race working at the Hauppauge location.  See id. (observing that " 'no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such a 'nigger' by a supervisor in the presence of subordinates' " (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 571 (2d Cir. 2000)).

Against that backdrop, even ostensibly race-neutral allegations, such as Heaney issuing Love a "fake parking ticket," can plausibly be interpreted as contributing to a racially hostile environment.    See Crawford v. AMTRAK, No. 3:15-cv-131, 2015 U.S. Dist. LEXIS 162608, at *22 (D. Conn. Dec. 4, 2015) (finding that, although some allegedly discriminatory remarks were "on their face race neutral, when evaluated in the context of the alleged ambience at the [plaintiff's place of employment],  the comments [were] susceptible of being understood as harassment motivated by racial animus").

Under these circumstances, the Court finds that these allegations – if borne out by the evidence – could lead a rational jury to conclude that (1) the harassment here is of such quality or quantity that a reasonable employee would find the conditions of Love's employment altered for the worse, and (2) that he subjectively experienced a worsening of his working conditions.  See Crawford, 2015 U.S. Dist. LEXIS 162608, at *28.

In reaching this conclusion, the Court is not persuaded by the Defendants' contentions that Love's allegations tell of mere stray remarks, a few "isolated incidents,"

11

which do not rise to an actionable level of severity or pervasiveness.   While it is true that, generally, a handful of isolated incidents will not rise to an actionable level, in this case, the Court finds that the number and frequency of the alleged remarks over a relatively short period of time distinguishes the facts alleged by Love from other cases where claims based on an allegedly hostile work environment were found to be too episodic or non-severe to withstand judicial scrutiny.   Compare Paul v. Postgraduate Ctr. for Mental Health, 97 F. Supp. 3d 141, 167-68 (E.D.N.Y. 2015) (finding two incidents of alleged discrimination over six years of employment to be "the very definition of stray remarks") (citations omitted), and Wesley-Dickson v. Warwick Valley Cent. Sch. Dist., 973 F. Supp. 2d 386, 406 (S.D.N.Y. 2013) (two racially-tinged remarks over five years of employment were insufficient to establish a hostile work environment), aff'd, 586 F. App'x 739 (2d Cir. 2014), with Kennedy v. New York, No. 14-cv-990S, 2016 U.S. Dist. LEXIS 28265, at *19 (W.D.N.Y. Mar. 4, 2016) (noting that "when the incidents are extremely frequent, particularly over such a short period of time, it is reasonable to infer that work conditions were 'altered for the worse' ") (quoting Fitzgerald v. Henderson, 251 F.3d 345, 358 (2d Cir. 2001)).

In the Court's view, this is particularly applicable in light of the fact that many of the alleged remarks by Love's supervisors involve the word "nigger," which is objectively and inextricably linked to racial animus.   See Wesley-Dickson, 973 F. Supp. 2d at 406 (finding that "various items that made [the plaintiff's] life unpleasant" did not contribute to a racially hostile work environment because there was "nothing linking those items to racial hostility"); see also Paul, 97 F. Supp. 3d at 168 (recognizing it as "important in hostile work environment cases to exclude from considerations [acts taken against the plaintiff] that lack a linkage or correlation to the claimed ground of discrimination") (citation omitted);

cf. Swinton v. Potomac Corp., 270 F.3d 794, 817 (9th Cir. 2001), cert. denied, 535 U.S. 1018, 122 S. Ct. 1609, 152 L. Ed. 2d 623 (2002) (noting that "nigger" is "perhaps the most offensive and inflammatory racial slur in English" and is "expressive of hatred and bigotry") (citation omitted).

Similarly, the Court also rejects the Defendants' contention that the period of time Love worked at the Hauppauge office – approximately four months – is too brief to plausibly claim that he was subjected to a hostile work environment. See Anderson v. England, 359 F. Supp. 2d 213, 218 n.2 (D. Conn. 2005) (holding that "three months of supervision is more than enough time to create a hostile work environment") (citations omitted); see also Whidbee, 223 F.3d at 70-71 (finding a question of fact regarding hostile work environment that involved a stream of racially offensive comments over the span of two to three months"); Krishnapillai v. Donahoe, No. 09-cv-1022, 2013 U.S. Dist. LEXIS 138420, at *49 (E.D.N.Y. Sept. 26, 2013).

While the Defendants' arguments in this regard may be relevant to an analysis on summary judgment, at this early stage, the question for the Court is simply whether, taken together, a jury crediting Love's general allegations could reasonably find pervasive harassment, even in the absence of specific details about each incident. See Crawford, 2015 U.S. Dist. LEXIS 162608, at *28 (quoting Torres v. Pisano, 116 F.3d 625, 631 (2d Cir. 1997), cert. denied, 522 U.S. 997, 118 S. Ct. 563, 139 L. Ed. 2d 404 (1997)). On the facts and circumstances of this case, the Court answers this question in the affirmative.

Therefore, the Court finds that the Plaintiff Love has stated enough facts to make it plausible that he was subjected to a racially hostile work environment, in violation of

42 U.S.C. § 1981.  Accordingly, the Defendants' motion to dismiss Love's claim based on a hostile work environment under § 1981 is denied.

### b.     As to the Plaintiffs Dunham and Nelson

The Court reaches a different conclusion with respect to the allegations of a hostile work environment relating to Dunham and Nelson.  As the Defendants appropriately point out, Dunham and Nelson each allege to have witnessed only one discriminatory remark.  In both cases, the remark was not directed at them.  Further, there is no allegation that either Dunham or Nelson knew about one another's experience, or that either of them were aware of any of the allegedly abusive treatment experienced by Love.

While the Court is sensitive to the harsh language alleged to have been overheard by these Plaintiffs, the law in this Circuit is well-settled that a single instance of allegedly discriminatory conduct, unless extraordinarily severe, generally cannot sustain a claim based on a hostile work environment.  See Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002) (noting a single act can only meet the severity threshold if "by itself, it can and does work a transformation of the plaintiff's workplace"); Lewis v. Conn. Dep't of Corr., 355 F. Supp. 2d 607, 622 (D. Conn. 2005) (noting that "[t]he prototypical 'single incident' that creates a hostile work environment usually involves a clear, expressed, overt, and truly egregious act of discrimination") (collecting cases).

In this case, taking the facts alleged with respect to Dunham and Nelson as true, they do not satisfy this exacting standard.  See Albert-Roberts v. GGG Constr., LLC, 542 F. App'x 62 (2d Cir. 2013) (dismissing a hostile work environment claim, which was supported by a supervisor's single use of the word "nigger," and distinguishing La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 210 (2d Cir. 2010), which involved "four

instances of a company manager calling the plaintiff a 'nigger,' coupled with threats of physical violence and racial slurs").

Accordingly, the Defendants' motion to dismiss the claims by Dunham and Nelson that they suffered a racially hostile work environment is granted.

**E.    As to Whether the Plaintiffs Have Stated Plausible Claims for a Racially Hostile Work Environment under the NYSHRL**

Hostile work environment claims under the NYSHRL are analytically identical to such claims under § 1981 and Title VII.  See, e.g., Cotterell v. Gilmore, 64 F. Supp. 3d 406, 432 (E.D.N.Y. 2014) (Spatt, J.) ("The standard for showing a hostile work environment under Section 1981 and the NYSHRL are essentially the same"); Bermudez v. City of New York, 783 F. Supp. 2d 560, 587 (S.D.N.Y. 2011) (noting that "hostile work environment claims under the NYSHRL are treated the same as claims under federal law") (collecting cases).  Thus, for substantially the same reasons as outlined above, the Court finds that the complaint states a plausible claim for a racially hostile work environment under the NYSHRL with respect to the Plaintiff Love, and not with respect to the Plaintiffs Dunham and Nelson.  Accordingly, the Defendants' motion to dismiss is granted in part and denied in part, to the same extent as outlined above.

**F.    As to the Plaintiffs' Cross-Motion to Amend and the Form of Their Papers**

The Plaintiffs indicate in their opposing brief a request that, in the event the Court grants the Defendants' motion to dismiss, in whole or in part, they be granted leave to amend the complaint to cure any pleading deficiency.   However, this request is procedurally improper, and at this juncture, will be denied.  See Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc., No. 12-cv-2285, 2014 U.S. Dist. LEXIS 157806, at *13-*14 (E.D.N.Y. Nov 6, 2014) (Spatt, J.) ("[N]umerous courts have held that a bare request to amend a pleading

contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15") (citing <u>Curry v. Campbell</u>, No. 06-cv-2841, 2012 U.S. Dist. LEXIS 40341, at *22 (E.D.N.Y. Mar. 23, 2012) ("To satisfy the requirement of particular[it]y in a motion to amend a pleading, the proposed amended pleading must accompany the motion so that both the Court and opposing parties can understand the exact changes sought"); <u>Evans v. Pearson Enters., Inc.</u>, 434 F.3d 839, 853 (6th Cir. 2006) ("We agree with several of our sister circuits that a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . . —does not constitute a motion within the contemplation of Rule 15(a)")).

This ruling is made without prejudice to the Plaintiffs' renewal of their request as a formal motion under Rule 15(a).

Finally, the Court notes that the Plaintiffs' opposing legal memorandum, in part, is contrary to this Court's Individual Rule II(A), which prohibits the use of footnotes in papers filed with the Court. The parties are advised that, in the future, papers containing footnotes will not be considered, without any further notice to the filing party.

### III.    Conclusion

Based on the foregoing, the Court grants in part and denies in part the Defendants' motion to dismiss. The Court grants the motion and dismisses the claims by the Plaintiffs Dunham and Nelson based on a racially hostile work environment in violation of 42 U.S.C. § 1981 and the NYSHRL. The Court denies the motion in all other respects.

Further, the Court denies the Plaintiffs' request for leave to amend their pleading without prejudice to renewal as a formal motion under Fed. R. Civ. P. 15.

Finally, the Court directs the Defendants to interpose an answer to the complaint within 20 days of the date of this Order, and respectfully refers this matter to United States Magistrate Judge Arlene R. Lindsay for discovery.

It is **SO ORDERED**

Dated: Central Islip, New York     _/s/ Arthur D. Spatt_____
       May 13, 2016               ARTHUR D. SPATT
                                   United States District Judge