UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
AUBREY LOVE, PAUL DUNHAM, and ANDREW NELSON,

                        Plaintiffs,                      **Decision & Order**
                                                                                              15-cv-5698(ADS)(ARL)

    -against-

PREMIER UTILITY SERVICES, LLC and USIC LOCATING
SERVICES, LLC,

                        Defendants.
-------------------------------------------------------------------------------x

<u>APPEARANCES:</u>

**Borelli & Associates PLLC**
*Attorneys for the Plaintiffs*
1010 Northern Boulevard, Suite 328
Great Neck, NY 11021
       By:   Michael J. Borelli, Esq.
                 Alexander T. Coleman, Esq., Of Counsel

**Littler Mendelson PC**
*Attorneys for the Defendants*
290 Broadhollow Road, Suite 305
Melville, NY 11747
       By:   Amy L. Ventry-Kagan, Esq.
                 Kelly C. Spina, Esq.
                 Leslie M. DiBenedetto, Esq., Of Counsel

**SPATT, District Judge:**

      In this employment discrimination case, the Plaintiffs Aubrey Love ("Love"), Paul Dunham ("Dunham"), and Andrew Nelson ("Nelson") move under the provisions of Federal Rule of Civil Procedure ("FED. R. CIV. P.") 15 for leave to file an amended complaint. The proposed amendment seeks to add a new claim on behalf of the Plaintiff Dunham only.

      For the reasons that follow, this motion is granted.

# I. BACKGROUND

The factual allegations underlying the original complaint were set forth in a prior order of this Court, familiarity with which is presumed. *See Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 249-51 (E.D.N.Y. 2016).

However, for present purposes, the following facts, construed here in favor of the Plaintiffs, bear repeating.

Premier is a utility contractor that operates facilities in Brooklyn, Queens, and Hauppauge.

On July 24, 2014, Dunham, who is African-American, began his employment at the Queens facility.

In December 2014, Dunham was transferred to Hauppauge for training. The Hauppauge facility was staffed predominantly with Caucasian employees.

In mid-January 2015, Dunham overheard Premier's Senior Director of Field Operations, Edward Heaney, remark to two other supervisors, "Don't worry about those stupid niggers, they're going to fail this [training] course. We don't need any niggers out here on [Long] Island representing Premier." Construed in the light most favorable to the Plaintiffs, it is reasonable to assume this statement was referring to them.

On January 24, 2015, Dunham's employment was terminated. The reason provided by Premier was that business had slowed, and Dunham was advised that he would be contacted for future work opportunities if and when business increased. However, the company never contacted him again.

On these facts, the complaint alleged that Dunham had been unlawfully terminated on the basis of his race and subjected to a racially-hostile work environment, in violation of 42 U.S.C. § 1981 and the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. L. § 290 *et seq.*

On December 4, 2015, the Defendants moved under FED. R. CIV. P. 12(b)(6) to dismiss the original complaint on the ground that it failed to state a plausible claim for relief.

In its May 15, 2016 Memorandum of Decision & Order, the Court partially denied that motion, finding that Dunham and the other Plaintiffs had alleged enough facts to plausibly support an inference of discriminatory motivation so as to state a wrongful termination claim. *See id.* at 252.

However, the Court granted the portion of the Defendants' motion that sought to dismiss Dunham's claim based on a racially-hostile work environment. In this regard, the Court reasoned that, even accepting Dunham's allegations as true, the single discriminatory remark that he overheard Heaney make was, standing alone, insufficient to plausibly give rise to a hostile work environment. *See id.* at 255-56.

On November 22, 2016, the Plaintiffs filed a motion to amend, seeking to add facts that they contend would support a plausible inference that Dunham experienced a hostile work environment.

Those facts, which are drawn from the proposed amended complaint ("PAC"), and construed in Dunham's favor, are as follows:

Soon after arriving at the Hauppauge facility in December 2014, Dunham learned that Heaney had placed a "fake parking ticket" on Love's windshield in the Premier parking lot. Dunham believed Heaney's conduct was intended to make Love feel uncomfortable and unwelcome, and to make it known that African-American employees were not welcome at Premier's Long Island facility. Dunham later overheard Heaney and another employee laughing about the incident.

Also in December 2014, Dunham learned that, several months earlier, Love had been assigned to report to a supervisor named "Mike K," who openly identified as a member of the Ku Klux Klan. Thereafter, Love conveyed to Dunham that Mike K boasted about flying a Confederate flag at his home; made frequent racial jokes about African-Americans; and openly used the word "nigger."

The Court notes that neither the original complaint nor the PAC specifies any of these alleged "racial jokes." However, as to Mike K's use of the word "nigger" in Love's presence – which Love apparently communicated to Dunham – it is alleged that in October 2014, Mike K stated to

3

Love that the definition of a "nigger" is an "ignorant person," but that Love was "not like the other niggers" because he "talk[ed] with sense."

According to the PAC, learning this information caused Dunham to become fearful and uncomfortable at work.

## II. DISCUSSION

Under FED. R. CIV. P. 15(a)(2), the Court should freely grant a party leave to amend its pleading when justice so requires. In determining whether leave is appropriate – a wholly discretionary decision, *see John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) – the Court considers factors such as undue delay, prejudice to the defendants, and futility of the proposed amendments, *see Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 118 (E.D.N.Y. 2011).

"An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead*, 282 F.3d 83, 88 (2d Cir. 2002). Stated differently, a proposed amendment will not be allowed unless the complaint, as amended, includes " 'enough facts to state a claim to relief that is plausible on its face,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[s] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433, 434 (2d Cir. 2015).

As is true of Rule 12(b)(6) motions generally, " '[i]n deciding whether an amended complaint meets this threshold, the Court is required to accept the material facts alleged in the amended complaint as true and draw reasonable inferences in the plaintiffs' favor.' " *Fernandez v. Kinray, Inc.*, No. 13-cv-4938, 2014 U.S. Dist. LEXIS 178422, at *9 (E.D.N.Y. Dec. 30, 2014) (quoting *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014)).

Applying these standards, the Court finds that, as it relates to Dunham, the PAC plausibly states a claim based on a hostile work environment.

Accepting the allegations in the PAC as true, Dunham is alleged to have witnessed one discriminatory remark in which he and his co-Plaintiffs were described by a supervisor as "stupid niggers" whom the company did not want as its representatives on Long Island; learned that this same supervisor left a fake parking ticket on Love's vehicle and later witnessed him laughing with a colleague about it; learned of "racial jokes" by a self-proclaimed white supremacist within the company's ranks, who is also alleged to have informed Love that his role as a supervisor was to force Love to quit; and learned of at least one occasion on which this same individual used the word "nigger" to refer to African-Americans. In the Court's view, these alleged facts, if proven, support a reasonable inference that Dunham's workplace was so permeated with discriminatory intimidation, ridicule, and insult that it altered the conditions of his employment for the worse.

The Court is mindful that, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity,' *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986), meaning that 'instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments,' *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

However, the Court is also mindful that "no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 439 (2d Cir. 1999) (quoting *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)); *see Ewing v. Coca Cola Bottling Co. of N.Y., Inc.*, No. 00-cv-7020, 2001 U.S. Dist. LEXIS 8849, at *21*22 (S.D.N.Y. June 25, 2001) (even where the amended complaint failed to detail the specific dates and times of alleged discriminatory remarks, allegations that those

terms "were bantered about regularly by [ ] supervisors" was sufficiently suggestive of a hostile work environment to survive dismissal).

This rule is applicable despite the fact that Dunham learned secondhand of many of the comments that he claims contributed to his hostile work environment. It is well-settled that, in evaluating whether alleged discriminatory remarks rise to an actionable level, courts are directed to evaluate the totality of the circumstances, including comments made outside a plaintiff's presence. *See Leibovitz v. New York City Tr. Auth.*, 252 F.3d 179, 190 (2d Cir. 2001); *Schwapp*, 118 F.3d at 110 (reversing summary judgment for an employer where the combination of plaintiff's firsthand exposure to racial comments and secondhand knowledge of others, even if not directed at him, may have contributed to a hostile work environment).

If true, the alleged regularity and flagrance with which the Plaintiffs' supervisors not only used the word "nigger," but openly disparaged African-Americans and acknowledged not wanting black employees working in the company's mostly-white Hauppauge location is sufficient to support a reasonable inference of a racially-hostile work environment.

Accordingly, the Plaintiffs' motion for leave to file an amended complaint is granted in its entirety.

### III. CONCLUSION

Based on the foregoing, in its discretion, the Court grants the motion to amend, and directs the Plaintiffs to file their amended complaint on ECF within five days of the date of this Order.

The Defendants' response will be due in the ordinary course.

It is **SO ORDERED:**

Dated: Central Islip, New York
June 3, 2017                    */s/ Arthur D. Spatt*
                                 ARTHUR D. SPATT
                                 United States District Judge